2020 IL App (2d) 180006-U
No. 2-18-0006
Order filed March 10, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14-CF-1094 |
| WILLIAM INGRAM, | ) ) ) | Honorable Donald M. Tegeler Jr. |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ZENOFF delivered the judgment of the court.
Justices McLaren and Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*: The State proved defendant guilty beyond a reasonable doubt of unlawful possession of cocaine with intent to deliver, within 1000 feet of a church, as the jury could reasonably infer that defendant was in actual possession of the cocaine before dropping it next to his car as he was arrested.

¶ 2    Defendant, William Ingram, appeals from his conviction of unlawful possession of 1 or more grams but less than 15 grams of a substance containing cocaine with intent to deliver, within 1000 feet of a church (720 ILCS 570/401(c)(2), 407(a)(1)(A), (b)(1) (West 2014)).  He contends that the evidence did not adequately exclude the possibility that he was coincidentally present near

the cocaine that the police recovered. We conclude that the evidence was sufficient, and we therefore affirm.

¶ 3                                    I. BACKGROUND

¶ 4     A grand jury indicted defendant on three counts alleging his unlawful possession of cocaine: (1) unlawful possession of 1 or more grams but less than 15 grams of a substance containing cocaine with intent to deliver, within 1000 feet of a church; (2) unlawful possession of 1 or more grams but less than 15 grams of a substance containing cocaine with intent to deliver (720 ILCS 570/401(c)(2) (West 2014)); and (3) unlawful possession of less than 15 grams of a substance containing cocaine (720 ILCS 570/402(c) (West 2014)).   It also indicted him on one misdemeanor count of driving with a suspended license (625 ILCS 5/6-303(a) (West 2014)).

¶ 5     At defendant's jury trial, the State's witnesses, all officers in the Elgin Police Department, testified that the Quality Inn on Tollgate Road in Elgin was known to officers in the department as a common location for sales and use of illegal drugs.   On the evening of June 20, 2015, the department deployed 10 or 11 officers in three teams to watch for drug sales and to arrest the offenders.   At about 8:19 p.m., officers stationed outside the hotel saw a subject park a car in a space next to the hotel and remain in his car.   An officer who was familiar with defendant from a prior investigation recognized him and confirmed that defendant's driver's license was suspended.   Two minutes after defendant parked, the officers in one team pulled their vehicle behind defendant's, exited their vehicle, and arrested defendant.

¶ 6     Officer Randy Fries, who had been stationed inside the hotel, testified that, when he heard the signal to arrest defendant, he walked 20 to 25 feet to where the arresting officers had removed defendant from his car.   As he approached the car, he noticed a cell phone and "a clear plastic baggie containing a white substance" on the blacktop between the open door of defendant's car

and its body.   Fries immediately collected the phone and the baggie.   He admitted on cross-examination that he had not searched the parking lot before defendant's arrest.

¶ 7   None of the officers testified to seeing defendant with the baggie or the phone, and none testified to seeing him drop anything.   The officers, on searching defendant, found that he had $4700 in cash in his front pants pockets, including 28 $100 bills.

¶ 8   Detectives Beth Sterricker and Douglas Neff interviewed defendant after his arrest. Sterricker testified that she neither recorded the interview nor obtained a written statement from defendant.   Sterricker asked defendant whether he knew why the police had arrested him.   He responded, "I suppose for selling drugs.   Defendant further told Sterricker that "[h]e *** did not know the amount of the drugs that he had on him."   He admitted that he "purchased the amount [of cocaine] for $50," planning to sell it for $100.   He explained that he sold drugs because he needed the money for his five children.

¶ 9   On cross-examination, Sterricker said that the cocaine on the blacktop was the only drugs they had discussed:

"[(DEFENSE COUNSEL)] Q. Okay.   And [defendant] didn't say that, he didn't claim that the drugs that were found on the ground was [*sic*] his, did he?

[(STERRICKER)] A. Well, that's the only drugs we were discussing, the drugs that were found.

Q. The drugs that you had mentioned.   But he didn't say, those were my drugs, did he?

A. I didn't specifically ask him if the ones found by his car were his.

Q. Right.   So since you didn't specifically ask, he didn't specifically say it, did he?

- 3 -

A. No."

On redirect examination, Sterricker said that defendant exhibited no confusion during the interview about what drugs they were discussing. She admitted on recross examination that she never asked defendant whether the drugs on the blacktop were his.

¶ 10    The proof of the nonpossession elements of unlawful possession of 1 or more grams, but less than 15 grams, of a substance containing cocaine with intent to deliver, within 1000 feet of a church are not at issue in this appeal.

¶ 11    The court denied the defense's motion for a directed verdict, and the defense rested without presenting any evidence. The jury, which had not received instructions on constructive possession, found defendant guilty on all counts, and the court sentenced defendant to 15 years' imprisonment on the first count. Defendant filed a timely notice of appeal.

¶ 12                                            II. ANALYSIS

¶ 13    On appeal, defendant argues that the State failed to prove his actual possession of the cocaine because the evidence does not adequately exclude the possibility that the baggie with the cocaine was already in the parking lot when he drove in. We hold that sufficient circumstantial evidence existed for a reasonable jury to conclude that defendant was in actual possession of the cocaine before it was found on the blacktop.

¶ 14    We review the sufficiency of the evidence under the standard of *Jackson v. Virginia*, 443 U.S. 307 (1979), as adopted by *People v. Collins*, 106 Ill. 2d 237 (1985).

> "When a court reviews the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citations.] This standard of review does not allow the reviewing

- 4 -

court to substitute its judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses. [Citation.] Further, reviewing courts apply this standard regardless of whether the evidence is direct or circumstantial [citation], and circumstantial evidence meeting this standard is sufficient to sustain a criminal conviction [citation]. ***

[When the proof is based on circumstantial evidence, t]he trier of fact need not, however, be satisfied beyond a reasonable doubt as to each link in the chain of circumstances. It is sufficient if all of the evidence taken together satisfies the trier of fact beyond a reasonable doubt of the defendant's guilt. [Citation.] Further, in weighing evidence, the trier of fact is not required to disregard inferences which flow normally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt. [Citation.] A reviewing court will not reverse a conviction unless the evidence is unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt. [Citation.]" (Emphasis in original. Internal quotation marks omitted.) *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009).

¶ 15 Viewed in the light most favorable to the State, a rational trier of fact could have properly concluded that defendant had actual possession of the cocaine. Possession of contraband may be either actual or constructive, but the State here has limited its argument to actual possession. To show actual possession of a controlled substance, the State must show that the substance was "in the immediate and exclusive control of [the] defendant." *People v. Frieberg*, 147 Ill. 2d 326, 360 (1992). Mere proximity to contraband is not sufficient evidence of actual possession. *People v. Schmalz*, 194 Ill. 2d 75, 81 (2000). Further, "knowledge of the location of contraband is not the

equivalent of possession" but is, nevertheless, necessary. *Schmalz*, 194 Ill. 2d at 81. Actual possession requires that the defendant exercise "present personal dominion" over the contraband; it exists when the defendant "exercises immediate and exclusive dominion or control" over the contraband. *Schmalz*, 194 Ill. 2d at 82. "Actual possession does not require present personal touching of the illicit material but, rather, present personal dominion over it." *Schmalz*, 194 Ill. 2d at 82. Here, the location of the cocaine combined with defendant's admissions allowed a strong inference that defendant had actual possession of cocaine when he arrived in the parking lot.

¶ 16    Defendant argues that the evidence does not preclude the possibility that he happened to park next to cocaine that someone else had dropped. We disagree. The cocaine's location and defendant's inculpatory statements were sufficient evidence to permit a reasonable jury to conclude that he brought the cocaine with him. Fries found the cocaine precisely where one would expect it if it fell from defendant or his car as the officers arrested him. Defendant suggests that he was the victim of an unfortunate coincidence, but his inculpatory statements to Sterricker *did* allow an inference that he was knowingly carrying cocaine. Defendant admitted that he was a drug dealer and that he had bought a small amount of cocaine for resale. Those statements stopped short of a flat admission that he had been carrying the cocaine Fries found on the blacktop, but they did allow a strong inference that the cocaine was his. The cocaine's coincidental presence remained a theory consistent with his innocence, but not one so plausible that the jury was required to raise it "to a level of reasonable doubt." See *Jackson*, 232 Ill. 2d at 281.

¶ 17    As the police removed him from his car, defendant either deliberately discarded the baggy or he dropped it accidentally. Either possibility supports the conclusion that he actually possessed the cocaine. First, discarding contraband is an act of dominion that is sufficient to establish actual

possession. See *People v. Jones*, 2019 IL App (1st) 170478, ¶ 27 (evidence that a defendant exercised dominion over an illegal firearm—for example, evidence that the defendant was seen discarding it—may establish the defendant's actual possession of that firearm). Second, defendant's accidental dropping of the cocaine would allow a reasonable jury to infer that he had actual possession of it until the police removed him from his car. It could infer from the cocaine's location on the blacktop that it had fallen from defendant's person or his car and from his admission that he was a drug dealer that he knew that it was present in the place from which it fell.

¶ 18    Defendant contends that *People v. Stewart*, 27 Ill App. 3d 520 (1975), requires reversal of his conviction. He argues that, because the evidence linking him to the baggie of cocaine on the blacktop was entirely circumstantial, the facts here are analogous to those in *Stewart*. The facts in *Stewart* have a few striking superficial similarities to those here, but *Stewart* is distinguishable primarily because the defendant made no inculpatory statements that suggested his possession of contraband.

¶ 19    In *Stewart*, three civilian witnesses, Hubbard, Martin, and Miller, saw the defendant park his car in a nursing home parking lot, exit the car, stoop or bend over, return to his car, and drive away. *Stewart*, 27 Ill. App. 3d at 521-22. Hubbard testified that it "appeared that [the defendant] might be putting a note on the windshield of the car parked next to his own car." *Stewart*, 27 Ill. App. 3d at 522. Martin saw the defendant "walk over to [a] light pole [near his car] and stoop over." *Stewart*, 27 Ill. App. 3d at 522. Martin and Miller approached the that light pole and found a cellophane bag containing leaves and stems of cannabis. *Stewart*, 27 Ill. App. 3d at 522. None of the three witnesses saw defendant with the bag, and none saw anything thrown from the defendant's car. *Stewart*, 27 Ill. App. 3d at 522. Noting that "in all cases the requirement of proof beyond a reasonable doubt requires that the inference of the defendant's possession of the

narcotics be more than a mere possibility," the *Stewart* court reversed the defendant's conviction of unlawful possession of cannabis. *Stewart*, 27 Ill. App. 3d at 523. It held that, "[a]t most[, it could] only say that this case involve[d] the discovery of narcotics in an area where the defendant had been seen behaving suspiciously." *Stewart*, 27 Ill. App. 3d at 525.

¶ 20 The State's theory in *Stewart* was that the defendant had intended to deliver the cannabis by placing the bag near the light pole, alerting the recipient with a note on his or her windshield. However, the evidence did not adequately exclude the possibility that the defendant was near the contraband by coincidence. Nothing in the evidence excluded the possibility that the defendant entered the parking lot to place a note on someone's windshield and, noticing the bag near the pole, stooped to see what it was. The defendant's actions in *Stewart* were not accompanied by other evidence that he was a cannabis dealer. Here, by contrast, the jury could take defendant's admissions to Sterricker as showing that he was a person likely to possess a baggie of cocaine. Thus, the jury could infer that defendant was the source of the cocaine. Further, the cocaine's location was by itself more incriminating than the location of the cannabis in *Stewart*. Fries found the cocaine where it might naturally have fallen or been discarded as the other officers took defendant from his car, whereas in *Stewart*, Martin and Miller found the cannabis where the defendant might naturally have stooped to look at it after leaving a note on the windshield. Given these differences, we deem that *Stewart*'s holding does not compel reversal. After viewing the evidence in the light most favorable to the prosecution, we conclude that the evidence of defendant's guilt was sufficient to sustain his conviction.

¶ 21                                     III. CONCLUSION

¶ 22 For the reasons stated, we affirm defendant's conviction.

¶ 23 Affirmed.